UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EARNEST JAMES WASHINGTON, III,<br><br>Defendant.<br>_____/ | NO. CR. S-11-00345 KJM<br><br><br>ORDER |

Defendant Earnest Washington III is charged with one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); the indictment also includes a forfeiture allegation based on 21 U.S.C. § 853(a). (ECF 8.) On January 24, 2012, defendant filed a motion to suppress evidence seized during a search of two separate residences on June 9, 2011, as well as evidence seized during defendant's arrest and a search of his person on the same day. (ECF 29.) The government filed an opposition to the motion on March 21, 2012. (ECF 35.) Defendant filed a reply on May 15, 2012. (ECF 40.) On May 30, 2012, the court heard argument on defendant's motion to suppress. Defendant was present in custody at the hearing, with his counsel, Paul Irish. The government was represented by Assistant United States Attorney Todd Leras. Following oral argument the court took the matter under submission. For the following reasons, the motion to suppress is denied.

/////

II. Factual Background

    A.    1048 Topsail Drive

On June 6, 2011, four law enforcement officers searched a trash bin outside of 1048 Topsail Drive, Vallejo, California. The trash bin was up against the curb on the street directly in front of 1048 Topsail, and no other bins were nearby. ECF 29 at 26. The photo of the bin in the record on the pending motion is dark and difficult to make out; neither party has provided a better copy of the photo after the court provided time for doing so.

Inside the trash bin, the officers found eight clear plastic bags, seven sandwich-sized and one gallon-sized, containing white residue that tested positive for the presence of cocaine. *Id.* at 26-27. They found one bag that had been molded into the shape of a brick, consistent with packaging of kilogram quantities of cocaine, and a number of other plastic bags with missing corners, consistent with packaging of smaller amounts of cocaine base. *Id.* In addition, the officers found two pieces of mail addressed to "Earnest Washington" at 1048 Topsail. *Id.* at 27.

On June 7, 2011, Solano County Deputy Sheriff Eric Oberreuter observed a dark purple Honda Accord parked at 1048 Topsail. The Honda was registered to Earnest Washington III at an address of 207 Cypress Ave., Apt. A, Vallejo, California. *Id.* Oberreuter identified the man exiting the Honda as Earnest Washington, Jr., based on a photo in the California Department of Motor Vehicles (DMV) database. *Id.* Washington, Jr. was the registered property owner of 1048 Topsail, but his DMV record showed him residing at 921 Colusa St., Apt. C, Vallejo, California. *Id.*

On June 8, 2011, Oberreuter requested a search warrant for 1048 Topsail. His affidavit in support of the warrant request described the June 6 trash pull and his June 7 observation and investigation of 1048 Topsail, and opined that Earnest Washington, Jr. lived at 1048 Topsail where he possessed cocaine suitable for sale. *Id.* at 26-27, 29. At 4:59 p.m. on June 8, a Solano County Superior Court Judge issued the warrant requested for 1048 Topsail. The warrant authorized a search of the residence, as well as Earnest Washington Jr. (with a birth date of November 12, 1948) and a 1996 Acura registered to Earnest Washington Jr. The warrant

also authorized seizure of items including cocaine, paraphernalia associated with the use and sale of cocaine, and any property identifying either the persons in control of the property or the existence of a conspiracy to sell illegal drugs, in addition to other items. *Id*. at 21-22.

    B.  207 Cypress Ave, Apartment A

In May 2010,[1] a person dubbed a Confidential Reliable Informant (CRI) told Oberreuter that someone known as "Big Earn," who lived in an apartment at 207 Cypress Ave, Vallejo, California, was selling cocaine. ECF 29 at 38. According to Oberreuter, the CRI had expertise in cocaine identification and had assisted in more than five prior investigations of illegal drug sales that led to arrests. *Id*. at 37-38. The CRI positively identified "Big Earn" as Earnest Washington III. The CRI had known Washington III for over one year, had bought cocaine base from Washington III at least ten times, and had seen Washington III with several rocks of cocaine base multiple times during May 2010. *Id*. at 38.

Also in May 2010, Oberreuter took part in an investigation of Washington III. During the investigation, the CRI conducted a controlled purchase of cocaine at 207 Cypress from the person the CRI identified as Washington III. *Id*. at 39-40. Officers saw Washington III and a white Chevrolet Tahoe registered to Washington III multiple times, at both 207 Cypress and 1048 Topsail, and one time saw Washington III doing yard work at 1048 Topsail. *Id*. at 39-41.

Oberreuter knew Earnest Washington III based on his own contact with Washington III, patrols of the area around 207 Cypress and word of mouth from citizens and law enforcement suggesting that Washington III was involved in the sale of controlled substances. *Id*. at 38-39.

On June 8, 2011, Oberreuter also requested a search warrant for 207 Cypress, Apartment A. Oberreuter's affidavit in support of this warrant indicated that a signed search warrant existed for 1048 Topsail based on probable cause established by the June 6, 2011 trash

---

[1] In its brief, the government cites the 207 Cypress warrant for the proposition that the purchases described by the CRI were made in May 2011. (Opp'n at 3, ECF 35.) Viewing the record in its totality, and relying on the evidence of record, the correct date appears to be May 2010. *See, e.g., United States v. Matthews*, 572 F.2d 208, 209 (9th Cir. 1977).

3

pull; the affidavit did not attach or incorporate by reference the Topsail warrant but referenced it more than once and also referenced the Topsail Drive address several times. *Id*. at 37, 39-42. In the Cypress affidavit, Oberreuter outlined the investigation of Washington III, but did not separately provide any details of the trash pull. *See id*. at 37-42. He noted that he had seen Washington III at Cypress Avenue on June 6, 2011, two days before seeking the warrant, and that he had seen the purple Honda Accord parked at the Topsail address one day before. *Id.* at 40-41. Based on his investigation, Oberreuter opined that at the time the warrant was requested Washington III was living at both 207 Cypress and 1048 Topsail and possessed cocaine for sale. *Id*. at 44.

At 5:08 P.M. on June 8, 2011, nine minutes after signing the Topsail warrant, the same Superior Court judge who signed the Topsail warrant signed the Cypress warrant. *Id*. at 23, 34. The warrant authorized a search of the apartment at 207 Cypress, Apartment A, Earnest James Washington III (with a date of birth of March 7, 1975) and two vehicles registered to Earnest James Washington III (a 2002 Chevrolet Tahoe and a 1999 Honda Accord), and the seizure of property including cocaine, paraphernalia associated with the use and sale of cocaine, and any property identifying either the persons in control of the property or the existence of a conspiracy to sell illegal drugs, in addition to other items. *Id*. at 32-33.

C.  Execution of the Warrants[2]

Both search warrants were executed on June 9, 2011. At about 7:00 a.m., law enforcement officers knocked on the door of 1048 Topsail. ECF 1 at 3. Through a side window, the officers observed Washington III approach the front door, then flee towards the back of the house. *Id*. The officers forced their way into the house and found Washington III standing in the garage wearing only a pair of underwear. The side door to the garage was open. *Id*. Detectives looked over the fence outside the side door and observed a red and black size XXL "Roca Wear" brand jacket in the yard of the house next door. *Id*. Searching the jacket, they discovered 992.3

---

[2] For this portion of the factual background, the court relies on the declaration of the agent attached to the complaint, as it is the only evidence in the record regarding the searches. *See* ECF 1.

4

grams of what they suspected to be crack cocaine in thirty-one separate plastic bags. *Id*. The officers then searched the residence at 1048 Topsail and discovered a baby blue size XXL "RocaWear" brand jacket, a digital scale, packaging and cocaine residue, two pistols, $12,632.00, and multiple indicia bearing Washington III's name. *Id*. After being given *Miranda* warnings, Washington III gave a recorded statement indicating that he lived between 1048 Topsail and 207 Cypress. *Id*.

Officers then proceeded to search the apartment at 207 Cypress, gaining entry with keys taken from Washington III. *Id*. at 4. They found several suspected cocaine base rocks, a digital scale, packaging, and indicia bearing both Washington III's name and the 1048 Topsail address. *Id*.

Following the searches, on June 9, 2011, defendant was arrested for possession of cocaine base for sale in violation of California Health & Safety Code § 11351.5. The federal charges pending here followed on July 18, 2011.

III. Motion to Suppress and Opposition

Defendant's motion aims to suppress all of the evidence seized and derived from the searches conducted on June 9, 2011. He identifies in particular the following:

> Seized from 1048 Topsail Drive in Vallejo: $1,232.00 in U.S. currency; one loaded Glock Model 17 9mm handgun, one loaded Beretta Model 96 .40 caliber handgun, one box of Speer 41 Action Express handgun rounds and Solano County court documents for "Earnest Washington," all found in the top drawer of a bedroom night stand; two black cell phones and one baby blue Roca Wear jacket size XXL found elsewhere in the bedroom; a digital scale with white residue and a lease document in the name "Washington" for a storage unit at Five Star Storage in Vallejo, found in the kitchen; six large ziplock plastic bags with white residue inside found in the garage; keys for 1048 Topsail Drive, 207 Cypress Avenue and a 2002 Chevrolet Tahoe found in the dining room; and a black and red Roca wear jacket size XXL and one large ziplock bag containing 31 wrapped pieces of a white chunky substance weighing 902 grams, both found adjacent to the eastern backyard fence of 1042 Topsail Drive.
>
> Seized from 207 Cypress Avenue, #A: Indicia in the name "Earnest James Washington III," an operable digital scale with residue, two boxes used to hold sandwich-size plastic bags, an ounce of marijuana in a clear plastic sandwich bag and two small rocks weighing .25 grams believed to be cocaine base, found in the kitchen; indicia in the name "Earnest James Washington III" and

5

an operable digital scale with residue found in the main bedroom; a torn plastic bag with residue and a "Food Saver" clear plastic freezer bag found in the hall closet; and a black "Air Jordan" jacket with red trim and 12 grams of marijuana found in the living room.

Physical and testimonial evidence pertaining to fingerprinting or laboratory testing of all of the above.

Statements by defendant to law enforcement personnel.

Audio and video recordings of any of the searches.

Any and all observations of law enforcement personnel.

(ECF 29 at 7-8.)

Regarding 1048 Topsail Drive, defendant argues he has standing to challenge the search of that address, which is not his permanent address but owned by his father Earl Washington, Jr., because he resides there much of the time and has a room there. The government does not challenge defendant's standing to challenge the search of the Topsail Drive address itself, but takes the position defendant does not have standing to challenge the search of the area adjacent to the backyard fence, in the neighbor's back yard, where the black and red Roca jacket and ziplock bag containing 31 pieces of a white chunky substance were found.

Defendant challenges the search warrant for the Topsail Drive address as not supported by probable cause, characterizing the warrant as supported solely by the "trash pull" conducted on the garbage can on the street in front of 1048 Topsail. Defendant notes the affidavit does not explain why law enforcement was surveilling Topsail Drive or conducting the trash pull there; it also does not say where the trash can came from or how long it had been there. Because the can was not locked and was accessible to the public, the reviewing magistrate could not have determined that the items found in the can were reasonably related to Topsail Drive. The search warrant affidavit also does not provide any substantive information regarding the home's owner, defendant's father, and does not make any representations regarding illegal activity taking place inside the home. Defendant argues generally that, for the reasons described, the search warrant is too "bare bones" to qualify for any reasonable good faith exception to the exclusionary rule.

Regarding 207 Cypress Avenue, defendant argues simply that because the search warrant for that address "relied on the factual information set forth in the 1048 Topsail Drive affidavit," it too does not pass constitutional muster. Mot. at 15:1-3.

The government argues that each search warrant affidavit is sufficient, independently, to establish probable cause, particularly in light of the deference accorded search warrants that have obtained judicial approval. The government argues that the Topsail Address application contained more than "bare bones" assertions, and that under the proper "totality of the circumstances" analysis, the mail addressed to "Earnest Washington" found in the "trash pull," along with baggies containing white residue and additional packaging material, provided a sufficient basis for issuance of the warrant to search that address. The government also notes the Cypress Avenue affidavit's report of a confidential informant's having made a controlled purchase inside the apartment. The government argues that the timing and circumstances related to the magistrate's signing of the two warrants support a reasonable inference that the magistrate properly understood that the applications and the affidavits supporting them were related and mutually supporting. Even if probable cause did not support the search warrant affidavits, the government argues that the officers conducting the searches had an objective good faith belief in their validity and therefore the searches qualify for the good faith exception to the exclusionary rule.

IV. Analysis

A. Standing To Challenge Search of Area Adjacent To Backyard Fence

"A person who voluntarily abandons property lacks standing to challenge its search." *United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992); *see also United States v. Burnette*, 698 F.2d 1038, 1047 (9th Cir. 1983) ("One who has voluntarily abandoned property has no right to complain of its search or seizure."). In determining whether property has been abandoned, the court should consider "whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search." *Huffhines,* 967 F.2d at 318. Disavowing any connection to property can support a finding of abandonment. *See id*. The timing of abandonment can be important if the

abandonment occurs in connection with an illegal search. *United States v. Gilman*, 684 F.2d 616, 620 (9th Cir. 1982) (if search illegal, court must determine whether nexus between illegality and abandonment); *see also United States v. Garcia*, 909 F.2d 389, 391 (9th Cir. 1990).

Here, the officers executing the search warrant saw defendant through a window as they approached the house on Topsail Drive. Defendant fled to the back of the house. Following their forced entry, the officers found defendant in the garage, with the side door open. Looking over the fence where the door was open, they saw the black and red Roca wear jacket. Defendant has not expressly denied a connection to the jacket or its contents; his motion seeks to suppress his statements to law enforcement. The jacket's location alone – on the other side of the fence surrounding 1048 Topsail Drive, in the neighbors' yard – suggests that even if defendant had at one point possessed the jacket he abandoned it before the officers found it. Moreover, defendant does not dispute that the jacket was found in his neighbors' yard.[3] Because the court finds that the search of 1048 Topsail was not illegal, as discussed below, it need not consider the timing of any abandonment of the jacket. The only persons who would have standing to challenge this part of the search are the neighbors, who have not joined defendant's motion.[4]

Defendant does not have standing to challenge that part of the search that led to seizure of the jacket and its contents. His motion to suppress is denied as to these items.

B. Probable Cause To Search 1048 Topsail Drive

The warrant clause of the Fourth Amendment requires "probable cause, supported by Oath or affirmation" to justify the issuance of a search warrant. U.S. Const. amend. IV. A warrant is valid "if there is a substantial basis for the magistrate's conclusion that 'given all the

---

[3] Defendant does not argue that the area of the yard where the jacket was found is within the curtilage of the residence at 1048 Topsail, and nothing before the court would support such an argument. *See United States v. Dunn*, 480 U.S. 294, 300-01 (1987) (central consideration in curtilage analysis is "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."

[4] While the government argues the neighbors gave permission to search their back yard, no evidence is before the court on the pending motion to support this argument.

circumstances set forth in the affidavit before him. . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). If a search conducted based on a warrant exceeds the scope of that warrant, the search violates the Fourth Amendment. *Horton v. California*, 496 U.S. 128, 140 (1990). In reviewing an affidavit supporting a search warrant request, a court must interpret it "in a 'common-sense' fashion, not in a hypertechnical manner; and in a close case, any doubt is to be resolved in favor of upholding the warrant in order to encourage resort to orderly legal processes." *United States v. Coleman*, 423 F. Supp. 630, 633-34 (N.D. Cal. 1976) (citing, among other cases, *United States v. Ventresca*, 380 U.S. 102, 108-09 (1964); *United States v. Wong*, 470 F.2d 129 (9th Cir. 1972)).

When the results of a warrant-based search are challenged in a motion to suppress, the defendant bears the burden of demonstrating that the search is unreasonable under the Fourth Amendment. *See United States v. Caymen,* 404 F.3d 1196, 1199 (9th Cir. 2005); 6 Wayne LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(b) (4th ed. 2004) (noting generally that "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution"). While defendant here attacks the search warrant affidavit's failure to explain why detectives were surveilling Topsail, he offers no authority for this omission's undermining a finding of probable cause, and the court has found none. Defendant also argues that the affidavit does not sufficiently link the contents of the trash can to the Topsail Drive address, and that it contains no information on the father who owned the house or any illegal activity occurring in the house; thus, says defendant, the warrant is too "bare bones" to withstand scrutiny or qualify for the good faith exception. As discussed below, these arguments are unavailing.

1. Contents of Garbage Can

"[E]xpos[ing] garbage to the public" can "defeat [a] claim to Fourth Amendment protection." *California v. Greenwood,* 486 U.S. 35, 40-41 (1988). "[I]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Id.* At the same time, as one

9

state court has observed, the Court in *Greenwood* "did *not* conclude that the trash inside a can left at the curb did not probably come from the residence." *People v. Thuss*, 107 Cal. App. 4th 221, 236 (2003). Even if a third party could have put incriminating items into a garbage can left on a public street, "'certainty is not required at this stage.'" *Id.* (citations omitted); *see Illinois v. Gates*, 462 U.S. at 235 ("While an effort to fix some general, numerically precise degree of certainty corresponding to 'probable cause' may not be helpful, it is clear that 'only the probability, and not a prima facie showing of criminal activity is the standard of probable cause.").

Here, the record reflects the trash pull was made from the garbage can two days before agents obtained the search warrant, and three days before they executed it. At the time of the trash pull, the can was up against the curb in front of 1048 Topsail. As noted above, the can contained eight plastic bags containing white residue that tested positive for the presence of cocaine. One bag had characteristics of a package for a kilogram quantity of cocaine, and other bags were missing corners, a common feature of packages of smaller amounts of cocaine base. Two pieces of mail in the can were addressed to "Earnest Washington" at 1048 Topsail. Taken together, the close proximity of the can to the Topsail address searched and the contents of the garbage can, which included mail directed to a person at the Topsail address who could have been either defendant or his father, support the conclusion that there was a probability of criminal activity taking place inside the Topsail home. Because certainty is not required, and a probability is sufficient to support a finding of probable cause, these facts support and do not detract from the issuing magistrate's finding of probable cause. *United States v. Tan Duc Nguyen*, 673 F.3d at 1264 (probable cause is satisfied if affidavit shows "'a probability or substantial chance of criminal activity, not an actual showing of such activity'" (quoting *New York v. P.J. Video, Inc*., 475 U.S. 868, 877-78 (1986)).

2. Ownership of and Activity Inside House

Direct observation of contraband or activities associated with the distribution of contraband is not necessary to a finding of probable cause. *United States v. Johnson*, 641 F.2d 652, 659 (9th Cir. 1980). Rather, "the nexus between the place to be searched and the items to

be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would likely hide contraband[, and] drug dealers frequently hide contraband at their residences." *Id*.; *see also United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir. 1980).

In this case, a sufficient nexus is established by the nature of the items found in the garbage can and the presence at the house, a day before the search warrant was sought, of the purple Honda Accord registered to "Earl Washington III," a name sufficiently close to the name on the discarded envelope to support a linkage. *United States v. Bosley*, 232 Fed. Appx. 638, 640 (9th Cir. 2007) (among factors supporting probable cause was existence of power company records indicating that subscriber at address to be searched had name similar to defendant's). Although the warrant affidavit relies in part on the misidentification of the defendant's father as the person emerging from the Honda, there is no indication that either the issuing magistrate or the officer himself was aware of the mistake; the misidentification does not undercut the showing of probable cause. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) ("Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)).

For the foregoing reasons, defendant's motion to suppress the items seized inside 1048 Topsail Drive is denied.

C. Probable Cause To Search 207 Cypress Avenue, #A

The search warrant affidavit for 207 Cypress Avenue includes references to the warrant for Topsail Drive, as well as information on a tip from a confidential informant, a controlled purchase of cocaine base using the confidential informant, defendant's activities in connection with the Topsail Drive and Cypress Avenue residences and the affiant's belief that defendant and his father were involved in a conspiracy to sell cocaine and cocaine base.

In this case, the issuing magistrate received applications for warrants for both addresses at the same time and considered them, if not simultaneously, then in rapid succession. While the Cypress warrant did not expressly incorporate the Topsail warrant, the timing of

submission of the warrant requests and of the court's signing of the warrants support the conclusion that the magistrate understood the two warrants were a package to be considered together. The cross-references to the Topsail warrant in the Cypress warrant bolster this conclusion. Because the search warrant for Topsail Drive was valid as discussed above, reliance on it in the warrant for Cypress Avenue also was valid. *Cf. United States v. Hernandez-Montez*, Crim. No. 06-60058-AA, 2008 WL 1775000, *6 (D. Or. Apr. 15, 2008); *see United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir. 1982) (proper to list two vehicles on two warrants directed to multiple locations under circumstances in which it appeared vehicles were being moved from place to place). The information set forth in the Cypress affidavit, when considered together with the information contained in the Topsail warrant, provided probable cause for the Cypress Avenue search, including by updating the otherwise stale information provided in the Cypress affidavit when considered alone.

D. Defendant's Statements

Defendant does not dispute that the officers executing the search warrants advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), before taking the statement in which he acknowledged living between 1048 Topsail and 207 Cypress. Because the officers' actions prior to defendant's being taken into custody and providing his statement were lawful, there is no bar to the admission of defendant's statements. *Compare Brown v. Illinois*, 422 U.S. 590, 604-05 (1975) (statements may be fruits of a Fourth Amendment violation).

E. Good Faith Exception

Because the court finds that the search warrants were supported by probable cause, it need not reach the question of whether the searches were otherwise lawful under the good faith exception.

F. Evidentiary Hearing

Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora,* 600 F.2d 1317, 1320 (9th Cir.), *modified on other grounds,* 609 F.2d 433 (1979). An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to

enable the court to conclude that contested issues of fact going to the validity of the search are in issue. *United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir.1979); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *see also United States v. Batiste*, 868 F.2d 1089, 1091-92 (9th Cir. 1989). On the current record, the factual record regarding the trash can's location and contents, the reasons for the requested searches, and the execution of the warrants, is sufficiently clear. It is only the legal conclusions to be drawn from that record that are in dispute. The court thus finds a full evidentiary hearing is not warranted.

Accordingly, defendant's motion to suppress is DENIED. His motion for an evidentiary hearing also is DENIED.

DATED: August 22, 2012.

_____
UNITED STATES DISTRICT JUDGE